**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HITHAM ABUHOURAN, | : | |
| | : | |
| Plaintiff, | : | Civil No. 11-4797 (NLH) |
| | : | |
| v. | : | |
| | : | |
| JULIE THRONTON NICKLIN, | : | **OPINION** |
| et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

**HITHAM ABUHOURAN,** Plaintiff pro se
18939-050
F.C. Schuykill Camp 1
P.O. Box 670
Minersville, P.A. 17954

**HILLMAN**, District Judge

Plaintiff Hitham Abuhouran ("Plaintiff") originally filed this complaint in United States District Court for the District of Columbia.  The District of Columbia severed the claim relating to the Freedom of Information Act (Count 10) and retained jurisdiction over that claim.  The remaining claims were transferred to the United States District Court for the Middle District of Pennsylvania.  The Middle District of Pennsylvania transferred the claims related to Plaintiff's time at F.C.I. Fort

Dix to this Court.  At this time, the Court must review the complaint, pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the complaint should be dismissed without prejudice at this time.

**I. BACKGROUND**

Plaintiff is currently an inmate at Federal Correctional Institution-Schuylkill in Minersville, Pennsylvania.  Plaintiff is asserting civil rights claims associated with his incarceration at United States Penitentiary ("USP")-Canaan in Waymart, Pennsylvania between June 12, 2007 and March 25, 2008 and his incarceration at FCI-Fort Dix in Fort Dix, New Jersey between March 25, 2008 and July 13, 2010.  Plaintiff alleges several complaints regarding his time at both USP-Canaan and FCI-Fort Dix.  He filed a complaint with the District Court for the District of Columbia on January 31, 2011.  After severing and retaining jurisdiction over Plaintiff's claim under the Freedom of Information Act, the District of Columbia transferred the remaining claims to the Middle District of Pennsylvania.

As summarized by the Middle District of Pennsylvania, the complaint contains claims against defendants from both Canaan and

Fort Dix under the Eighth Amendment, Due Process Clause of the Fifth Amendment, and Equal Protection Clause of the United States Constitution.  Additionally, he asserts retaliation claims against defendants from both Canaan and Fort Dix, as well as claims of conspiracy, fraud, fraudulent misrepresentation, concealment, and non-disclosure against defendants from Canaan, Fort Dix, and the American Correctional Association ("ACA") (incorrectly identified by the Plaintiff as the "American Correctional Accreditation").  Finally, Plaintiff brings claims under 42 U.S.C. §§ 1983, 1985 (though it is not clear whom these claims are brought against because the claims are not actually listed in Counts 1-10) and a claim against the United States under the Federal Tort Claim Act (also not listed in Counts 1-10).

A magistrate judge in the Middle District of Pennsylvania reviewed the complaint pursuant to 28 U.S.C. § 1915(e)(2) and filed his report and recommendation on March 11, 2011 (Doc. Entry No. 10).  The district judge adopted the magistrate judge's recommendation that the claims pursuant to the Federal Tort Claims Act be dismissed; that the claims pursuant to Section 1983 be dismissed; that the Bivens claims arising out of USP-Canaan be dismissed; and that the Bivens claims arising out of Fort Dix be transferred to the District of New Jersey.  The district judge rejected the recommendation that the claims pursuant to 42 U.S.C.

3

§ 1985 be dismissed.  (Docket Entry No. 14.)  Subsequently, the portion of Plaintiff's complaint regarding the incidents at F.C.I. Fort Dix were transferred to this Court.  (Docket Entry No. 15.)

The following factual allegations are taken from the complaint, and are accepted as true for the purposes of this screening only.  The Court has made no findings as to the veracity of Plaintiff's allegations.

On March 25, 2008, Plaintiff was transferred to FCI Fort Dix in Fort Dix, New Jersey.  From April 2008 until July 2008, Plaintiff was authorized to be housed on the first floor due to a medical condition.  However, Plaintiff alleges that Defendant Hamel, who was in charge of Plaintiff's unit at the time, favored other inmates and kept Plaintiff on the second floor for ninety days.  After Plaintiff's doctor sent an email to Defendant Hamel informing him of the "first floor pass", Defendant Hamel moved Plaintiff to a four-men room on the first floor, but not to a two-men room, even though there were two-men rooms available.

On December 11, 2008, Plaintiff was transferred to the East Side compound of the Fort Dix facility.  Once there, he was told that he did not have a "first floor pass" and that he must deal with health services.  Plaintiff met with his counselor and he was advised that he did have a "first floor pass", but there were no available spots and he was placed on a wait list.  On December

4

19, 2008, health services contacted Plaintiff's attorney and he was moved to a first floor room.

In late January 2009, Defendant Simms moved Plaintiff to a second floor room, stating that he had reviewed Plaintiff's medical records "for an hour" and there was no record of a "first floor pass."  Also in January 2009, a health services duty restriction printout showed that all medical restrictions were erased from Plaintiff's records.  Plaintiff filed several grievances regarding these issues.  In March 2009, Plaintiff was moved to the first floor.

Plaintiff alleges that during the period of September 2009 through March 2010, Defendants Zickefoose and Fitzgerald initiated a "harassment campaign" against all men at Fort Dix. Defendants Zickefoose and Fitzgerald assigned Defendant Mrs. "O" as the sole unit officer for six months.  Plaintiff alleges that while Mrs. "O" would pat search the male inmates, she would sexually assault them.  He further alleges that Mrs. "O" would bring cell phones into the prison so her staff could then confiscate those cell phones because there was an incentive program run by the Bureau of Prisons.

On or about January 2010, Defendant Biederbeck pat-searched Plaintiff and during the course of that search, Plaintiff was "struck under the arm pit and was stepped on his ancle [sic]...Defendant Biederbeck caused pain and suffering to the

plaintiff." Plaintiff alleges that these actions by Defendant Biederbeck were in retaliation for Plaintiff's filing of grievances against the staff in his previous unit, as well as due to his nationality.

Plaintiff alleges that there is excessive air pollution and noise due to the prison facility's close proximity to the Fort Dix air force base. He further alleges that the facility is overcrowded, resulting in health problems and contagious diseases. He further alleges that from March 2008 until the present, he has been housed in a unit "full of asbestos materials." Plaintiff further alleges that Fort Dix is understaffed and that it failed its inspections, but due to fraud and its misrepresentations to American Correctional Accreditation, they were still granted their approvals. Plaintiff further alleges that the Food Service deviates from the national menu.

Plaintiff further contends that the non-profit group American Correctional Accreditation ("ACA") conspired with the Bureau of Prisons to deprive inmates of appropriate living conditions. Defendant ACA failed to issue citations to Fort Dix, despite being aware of all the violations.

Plaintiff asserts violations of the Eighth Amendment, the Due Process Clause and retaliation by Defendants Hamel, Simms and McKinnon. He further claims violation of his Fifth Amendment

Equal Protection rights by all Fort Dix defendants.  Plaintiff alleges a claim of "fraud, fraudulent misrepresentation, concealment and non-disclosure" against Defendant ACA and all Fort Dix defendants.  Finally, he asserts a claim of civil conspiracy against Defendant ACA.  Plaintiff seeks monetary damages for all these violations.

## II.  DISCUSSION

### A. Legal Standard

The Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).  This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and § 1915A because Plaintiff is proceeding as an indigent and is a prisoner.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also

7

United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009)(citing Iqbal, 129 S.Ct. at 1948). The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. See id. at 1949-50; see also Twombly, 505 U.S. at 555, & n. 3; Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). "A complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its

8

facts." <u>Fowler</u>, 578 F.3d at 211 (citing <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234-35 (3d Cir. 2008).

## B. Analysis

In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 389, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  The Supreme Court has also implied damages remedies directly under the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), and the Fifth Amendment, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." <u>Schreiber v. Mastrogiovanni</u>, 214 F.3d 148, 152 (3d Cir. 2000) (citing <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988).

<u>Bivens</u> actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights. <u>See</u> <u>Egervary v. Young</u>, 366 F.3d 238, 246 (3d Cir. 2004).  Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel", there is a "general

trend" to incorporate § 1983 law into <u>Bivens</u> suits.  <u>See</u> <u>Chin v.</u> <u>Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987).[1]

In order to state a claim under <u>Bivens</u>, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  <u>See</u> <u>Mahoney v. Nat'l Org. For Women</u>, 681 F.Supp. 129, 132 (D.Conn. 1987) (citing <u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149, 155-56, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)).

**1. Eighth Amendment Claims**

Plaintiff alleges a violation of his Eighth Amendment rights by Defendants Hamel, Simms and McKinnon.  It appears that this claim relates to the Defendants' failure to assign Plaintiff to a first floor cell despite the fact that he had a first floor medical pass.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); <u>Rouse v. Plantier</u>, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for

---

[1] Title 42 of the United States Code, Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003); Brightwell v. Lehman, 637 F.3d 187, 194 (3d Cir. 2011).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted); Tormasi v. Hayman, 2011 WL 5838436, at * 2 (3d Cir. November 21, 2011).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to

his serious medical need.  See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety).  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.

With regard to the first prong, Plaintiff states that he suffers from hypertension, diabetes, high cholesterol, heart palpitations, asthma, swelling in the ankles, severe back pain, degenerative discs, black outs, difficulty breathing, poor vision, poor blood circulation and a sinus condition.  Assuming that these conditions constitute a serious medical need, the allegations still fail to support the second, subjective prong (deliberate indifference), necessary to state an actionable

Eighth Amendment claim.

Specifically, with regard to Defendant Hamel, the complaint itself states that once Defendant Hamel was informed by Plaintiff's doctor that he was in need of a first floor cell, Defendant Hamel moved Plaintiff to a first floor cell.  With regard to Defendant Simms, the complaint alleges that he ordered Plaintiff to move to the second floor in January 2009 after reviewing his medical records for over an hour and finding no first floor pass.  According to the complaint itself, in January 2009, a computer printout of Plaintiff's file showed that he did not have any medical restrictions on record.  With regard to Defendant McKinnon, there do not appear to be any specific allegations other than the fact that Plaintiff filed grievances accusing Defendants Simms and McKinnon of tampering with his medical records.  However, Plaintiff alleges no facts to support this claim.  As such, Plaintiff has failed to allege facts sufficient to allow this Eighth Amendment claim to proceed at this time and it will be dismissed without prejudice against all defendants for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**2. Due Process Violations**

Count Two of the complaint alleges a due process violation against Defendants Hamel, Simms and McKinnon, as well as defendants from USP-Canaan.  However, it appears from the

allegations contained in this count that it relates only to the USP-Canaan defendants.  Further, it is not clear from the body of the complaint what due process violation Defendants Hamel, Simms and McKinnon allegedly committed.  Therefore, this claim will be dismissed against these defendants without prejudice.

In the body of the complaint, Plaintiff makes generalized allegations of due process allegations against Defendants Fitzgerald and Zickefoose.  He alleges that they imposed policies of excessive force, pat searches and other harassment.  However, none of the allegations relate to any treatment experienced specifically by Plaintiff.  Therefore, these claims will also be dismissed.

**3. Retaliation**

Count Three of the complaint alleges a claim of retaliation against Defendants Hamel, Simms and McKinnon, as well as defendants from USP-Canaan.  However, it appears from the allegations contained in this count that it relates only to the USP-Canaan defendants.  Further, it is not clear from the body of the complaint what retaliation Defendants Hamel, Simms and McKinnon allegedly committed.  Therefore, this claim will be dismissed without prejudice.

**4. Equal Protection**

In Count Seven, Plaintiff alleges that "from approximately June 12, 2007 until present, while incarcerated at the F.C.

14

Canaan, and FCI, Fort Dix the plaintiff was subjected to a
pattern of systematic and invidious discrimination by the
defendants due to his ethnicity and/or national origin."
Plaintiff does not identify which defendants he brings this claim
against.

The concept of equal protection, as embodied in the Due
Process Clause of the Fifth Amendment, see Bolling v. Sharpe, 347
U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), has been construed
to implicitly include an equal protection guaranty generally as
broad as that of the Fourteenth Amendment, applicable to the
states.  See United States v. Milan, 304 F.3d 273, 281 n. 6 (3d
Cir. 2002) (citing United States v. Leslie, 813 F.2d 658 (5th
Cir. 1987)), cert. denied, 538 U.S. 1024 (2003).

The Equal Protection Clause of the Fourteenth Amendment
commands that no State shall "deny to any person within its
jurisdiction the equal protection of the laws," which is
essentially a direction that all persons similarly situated
should be treated alike.  See City of Cleburne, Texas v. Cleburne
Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313
(1985) (citing Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382,
72 L.Ed.2d 786 (1982)); Artway v. Attorney General of New Jersey,
81 F.3d 1235, 1267 (3d Cir. 1996).  Despite its sweeping
language, though, "[t]he Equal Protection Clause does not forbid
classifications.  It simply keeps governmental decisionmakers

15

from treating differently persons who are in all relevant respects alike." <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. <u>See Village of Arlington Heights v. Metropolitan Housing Development Corp.</u>, 429 U.S. 252, 264-66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); <u>Washington v. Davis</u>, 426 U.S. 229, 242, 244-45, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).  Thus, discriminatory intent must be a motivating factor in the decision, even though it need not be the sole motivating factor.  <u>See Village of Arlington Heights</u>, 429 U.S. at 265-66.

Once this intentional disparity in treatment is shown, a court will proceed to determine whether the disparity can be justified under the requisite level of scrutiny.  <u>See City of Cleburne</u>, 473 U.S. at 439-40; <u>Plyler</u>, 457 U.S. at 216-17.  In testing the validity of an official action that is alleged to deny equal protection, the action "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." <u>City of Cleburne</u>, 473 U.S. at 439-40. The general rule gives way, however, when a statute classifies by race, alienage or national origin since these classifications "are subjected to strict

scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." Id. at 440.

It is not clear what "pattern of discrimination" Plaintiff was subjected to by the Fort Dix defendants.  Plaintiff references one interaction with Defendant Biederbeck, where Plaintiff alleges that during the course of a pat search by Defendant Biederbeck, Plaintiff was "struck under the arm pit and was stepped on his ancle [sic]."  Plaintiff alleges that these actions by Defendant Biederbeck were "motivated by his attempts that the plaintiff drop his grievance against two staff members from unit 5711 where the plaintiff was previously housed his actions were retaliation in nature and his animus towards the plaintiff's nationality."  This conclusory statement is not sufficient to state a claim, as required by Iqbal.  See Iqbal, 129 S.Ct. at 1949.  As such, this claim will be dismissed without prejudice.

## 5. Fraud, Fraudulent Misrepresentation, Concealment And Non-Disclosure

In Count Eight, Plaintiff states that "from approximately June of 2007 until present the defendants and their co-conspirators have engaged in a consistent course of conduct through which they have fraudulently misled past, present and prospective inmates, governmental authorities and other members of the public, and tax payers.  Defendants and heir [sic] co-

17

conspirators have made false and misleading statements as to plaintiff [sic] circumstances and accusations against him in F.C. Canaan, and FCI, Fort Dix treatment and bogus claims.  The defendants "ACA" made material false reports and statements that was [sic] adverse to the plaintiff's health and safety among all other inmates."

To the extent Plaintiff attempts to bring these fraud claims pursuant to Bivens, Plaintiff has failed to allege the loss of any constitutional right.  Nor has he alleged that the ACA is acting under "color of federal law."  In fact, in the complaint, Plaintiff identifies ACA as a "non profit entity to secure safe living conditions to all inmates."  Though he alleges a conspiracy between the ACA and their "co-conspirators," the complaint contains only conclusory allegations regarding said conspiracy which are insufficient to state a claim under Iqbal. To the extent Plaintiff attempts to invoke the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, the court declines to exercise jurisdiction.[2]

---

[2] "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284-1285 (3d Cir. 1993).

Finally, if Plaintiff is attempting to bring these claims pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332, it would also be dismissed.  A plaintiff, as the party asserting federal jurisdiction, "must specifically allege each party's citizenship, and these allegations must show that the plaintiff and defendant are citizens of different states." American Motorists Ins. Co. v. American Employers' Ins. Co., 600 F.2d 15, 16 (5th Cir. 1979); see also Universal Reinsurance Co., Ltd. v. St. Paul Fire & Marine Ins. Co., 224 F.3d 139, 141 (2d Cir. 2000) ("The failure to allege [the party's] citizenship in a particular state is fatal to diversity jurisdiction"); Kissi v. Gillespie, 348 Fed.Appx. 704, 706 (3d Cir. 2009).  Here, Plaintiff alleges no facts that would permit this Court to determine the citizenship of any party.  Therefore, diversity jurisdiction is lacking.

As such, this count of the complaint is dismissed without prejudice.

**6. Civil Conspiracy**

In Count Nine, Plaintiff alleges that Defendants ACA participated in a civil conspiracy among themselves and with others, the general purpose of which was to conceal the asbestos located in the housing units of FCI Fort Dix.

Though it is not entirely clear, it appears that Plaintiff intends for this claim to be construed as one pursuant to 42

U.S.C. §1985(3).  The elements of a § 1985(3) claim are "(1) a
conspiracy; (2) for the purpose of depriving, either directly or
indirectly, any person or class of persons of the equal
protection of the laws, or of equal privileges and immunities
under the laws; and (3) an act in furtherance of the conspiracy;
(4) whereby a person is injured in his person or property or
deprived of any right or privilege of a citizen of the United
States." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir.
2006) (internal quotations and citations omitted).

As discussed above, the Complaint fails to allege facts
sufficient to support a conspiracy claim of any kind.  Further,
Plaintiff does not allege that Defendant ACA deprived him of
equal protection.  Consequently, Plaintiff's § 1985 claim
likewise will be dismissed for failure to state a claim.

## III.  CONCLUSION

For the reasons stated above, the complaint will be
dismissed in its entirety for failure to state a claim upon which
relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)
and 28 U.S.C. § 1915A(b)(1).  However, because it is conceivable
that Plaintiff may be able to supplement his pleading with facts
sufficient to overcome the deficiencies noted herein, the Court
will grant Plaintiff leave to move to re-open this case and to

file an amended complaint.[3]


Dated: February 28, 2012



s/ Noel L. Hillman
NOEL L. HILLMAN
United States District Judge


At Camden, New Jersey.

---

[3] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.